Gentlemen, we have a busy morning. We have six cases on the calendar, two patent cases from district courts, a patent case from the PTO, two government employee cases, and a veterans appeal. One of the government employee cases and veterans appeals will not be heard, will be submitted only in the brief, so we will hear four cases. After our first case, we will adjourn briefly and have a minor change of composition of the panel, and we'll return in a few moments thereafter. Our first case is BASF AGRO v. CIPLA LIMITED. It's Marielle and BASF v. CIPLA LIMITED in Valsera, 2011-1471 and 1472. We'll hear from Mr. Setti first or CIPLA. Your Honor, my name is Nick Setti, and I represent CIPLA in this case. This is an appeal from an order that did three things. First, it denied a motion to vacate under Rule 60b-4. Second, it found civil contempt. And third, it entered final judgment against CIPLA and Valsera, which should be reversed for at least five reasons. I'll address the personal jurisdiction and extraterritoriality issues. You have to remember this is a contempt case, and as a contempt case, it must rely on a valid judgment below. Here, the district court lacked personal jurisdiction over CIPLA under the Georgia long-arm statute and Rule 4f-2. Those are the only two bases that Marielle pleaded in this case. Marielle has since conceded that it didn't have jurisdiction under those grounds, and the district court has found that it didn't have jurisdiction under those grounds at paragraph 13 of the 2011 order. Because there was no personal jurisdiction, there was no valid judgment below, and the district court would have known that if it had reviewed its own jurisdiction. Tell us why 4k-2 doesn't apply. If there was no jurisdiction in Georgia and under TOUCHCOM, there was no alternate jurisdiction elsewhere, then why wasn't there proper jurisdiction? Your Honor, in reviewing your opinion in TOUCHCOM, I believe there are three bases for why Rule 4k-2 was invoked improperly here. The first is that Rule 4k-2 didn't appear in any pleading in this case, and under Rules 7 and 8, that alone is a basis. It didn't appear in TOUCHCOM? TOUCHCOM was different, Your Honor. In that case, you were reviewing a grant of a dismissal. So first of all, once you found on appeal that there was an independent basis for jurisdiction under 4k-2, the case went back down for any appropriate amendments, for any appropriate rulings on the merits, and that's all we've really asked for here. Second, it wasn't a default judgment case. The problem here is that CIPLA was entitled to rely on the jurisdictional bases that were asserted, and it's essentially an ex post facto cure or fix of a fatal defect, and that is that the pleaded bases for jurisdiction simply weren't valid. Also in TOUCHCOM, there was no question as to service of process. The Breskin and Parr firm had been served properly, and they appeared in court. Here, the second problem with Rule 4k-2 is that the rule expressly requires service, a valid service of a summons. It just doesn't exist here. The only, again, the only pleaded bases here were the Georgia Long Arm Statute and Rule 4f-2. That was completely inappropriate because India had acceded to the Hague Convention four months earlier. The proper service should have been under Rule 4f-1, which is... So are you saying that, assuming for the moment one were to agree with you on the jurisdictional issue, are you saying that the case, as I understand it, you're arguing that the contempt should be vacated? Yes, Your Honor. And that we should send the case back to the district court with instructions to dismiss, or I guess vacate, the underlying default judgment? Yes, Your Honor. And then what should happen? Should there be also an instruction to transfer it to Illinois, or just a flat-out dismissal and leave it at that? I think the right answer is a flat-out dismissal, Your Honor. In the other district courts in which there's been a proper designation of an alternate forum, like CIPLA did here when it identified the K2 doesn't apply, one-to-one names an alternate forum. This court has adopted that analysis in TOUCHCOM and incorporating ISI International. And the result then is that the district court has divested a personal jurisdiction and it can't proceed. So you're saying it would lack the authority even to order a transfer? Your Honor, I believe that's correct. I mean, it doesn't leave the plaintiff without a remedy because they could then file in the Northern District of Illinois. Or in this case, there's actually not even the need for that because Velsera already brought a declaratory judgment action on the same issues in the District of Delaware. And that particular action has been stayed, awaiting decisions in this appeal. Good enough to identify an alternate forum. Don't you also have to establish that you're subject to the jurisdiction of that alternate forum? Well, Your Honor, the quote from ISI International that Judge Lurie incorporated into the TOUCHCOM analysis says that all you have to do is name the alternate forum, but the forum has to be one in which the case could have been brought. So it's the could-have analysis. And here, once CIPLA identified the Northern District of Illinois, it was consenting to that jurisdiction. And that has to be the appropriate analysis because the other alternative would be that you'd have to examine the sufficiency of contacts with the Northern District of Illinois. If there were sufficient contacts in and of themselves, then we'd never get to this step of the 4K2 analysis, since the predicate is that there are insufficient contacts with any particular state, but sufficient contacts with the country as a whole. So if we start examining specifically what those contacts are and determining whether there could have been a specific jurisdiction in Illinois in the first instance, then I think that's going down the wrong path. If you establish that, you wouldn't be in 4K2. We should have transferred to Illinois. Wouldn't the minimum contacts analysis be part of the Subject 2 language in 4K2 in the statute, and also the Touchcom case where the opinion says that this would be a forum, a proper forum, where a suit could be brought? Okay, Your Honor. So let's assume that we're talking about the contacts analysis. In other words, is it enough to say, I want to be sued in Illinois, or I want to be sued in California, and then that's it? If someone has a bone to pick, it's with the rule itself, because the rule is already at the bounds of minimum contacts analysis. If this case had been brought in 1992, we wouldn't be having this discussion because we'd be under the rubric of omni in the Supreme Court. Once 4K2 was enacted, it gave a plaintiff, like this one, that couldn't establish contacts with any particular forum, a remedy that didn't exist before. And if the price of getting that remedy, in other words, the case sticks in the U.S. under federal jurisdiction, is that they have to litigate in Alaska or Hawaii, or in this case, Illinois, then that's, I think, the way the rule was written. Muriel chose to go down that path. We didn't make these decisions for them. Moreover, all of the acts in which CIPLA was engaged in this case all took place in India. Okay? They made the product in India, they sold the product and title passed in Mumbai, and from an extraterritorial perspective, we have another layer here that's really problematic. If you look at the international rectifier analysis, this case tracks very precisely the facts of San Francisco. Let's go back. If you're a foreign defendant and you're sued under 4K2, you're saying that all you have to do is to identify, to say, I want to be sued in Arizona, and then that's it. Arizona's going to take the case. Well, either Arizona takes the case or the first courts will dismiss. Is that all you have to do, or is there something else? I mean, do you have to satisfy that you would be subject to the jurisdiction of that court? Your Honor, satisfying that comes through the form of the consent. In other words, if you look at the Rim case that's in our papers, in that case, Texas court looked at the case, reviewed the designation of Delaware as an alternate form, and dismissed. God, family, country, Illinois court, same story, Michigan designation, dismissal. That is how the courts are following this track. Your Honor, I see that my time is up, but if there are any other questions. Thank you, Mr. Setti. Mr. Woodard, did you start that at 8? Okay, so he has two minutes of rebuttal time. Yes, Your Honor. Please start, Mr. Lombardi, at 10, and then he'll use his rebuttal time now or save it. Thank you, Your Honor. George Lombardi, on behalf of Velsera, may it please the court, the most significant point in terms of Velsera in this case on this appeal is the fact that Velsera was a non-party to the initial default judgment in this case that was entered in 2008. But Velsera intervened, didn't it? Velsera did intervene, Your Honor, and that was because the rule to show cause that issued in the Georgia court specifically named Velsera's product, and Velsera was careful to intervene and preserve its rights to a full determination of the issues here, the infringement issues and the invalidity issues that Velsera believes are in play with this particular patent. But Velsera did intervene only after its product was specifically put at issue. Non-parties to default judgments have particular rights and particular concerns with not being held liable in contempt for violation of an order that it was not a party to. And in this case, the net effect of subjecting Velsera to the default judgment order and to a contempt proceeding that arises out of that default judgment order is to deny Velsera the right to a full determination of the patent issues that are relevant to its product and to this patent that are at issue here. But Mr. Seddy referred to the Delaware litigation. What is the present status of that? The present status of the Delaware litigation was that was initially filed by Velsera before this contempt proceeding even... In other words, after the default judgment, but before the contempt proceeding. That is correct, Your Honor. And then since then, in the wake of the contempt proceeding, Muriel made a motion in the Delaware court to dismiss our action, and it was dismissed based on the holdings of the contempt hearing. So now Velsera finds itself in a position where the contempt hearing... So there's now nothing pending in Delaware. There is something pending, but not relevant to this particular case. I should be more clear, Your Honor. The Delaware court in the first declaratory judgment case only dismissed portions related to the 329 patent and the Pet Armor Plus product. There were other patents and other issues that remained there. Since then, we have filed, Velsera has filed, and the court received a 28-J letter on this, another declaratory judgment action relating to a reformulation of the product. So that product is different from this product. But the bottom line point here is that Velsera is left without an opportunity to have a full hearing on the infringement issue or the invalidity issue. Velsera is stuck with what happens in a contempt proceeding, and Velsera was not properly subject to the contempt proceeding. I'm sorry to jump in, but time is fleeting, so to speak. Let me ask you, you and Mr. Sette both urged that there was a lack of jurisdiction in the initial case, lack of personal jurisdiction. And Mr. Sette, in his time at the podium, focused on the fact that the original complaint that led to the default judgment was directed to, in terms of personal jurisdiction, the Georgia long-arm statute. No hint, in his view, of 4K2 issues. In your view, as a matter of law, what does a plaintiff have to do if it wishes to raise a 4K2 jurisdictional basis in a complaint or otherwise? Well, Your Honor, I'm going to rely on the comments of Mr. Sette on that in general, but I would say what Merrill needed to do here was get jurisdiction right in the first instance. They now concede that they didn't have correct jurisdiction. You're saying it should have amended its original complaint? Well, I'd say they should have gotten it right when the initial default proceeding happened. They should have had their basis for jurisdiction correct then. Now what we're going through is a process of backfilling to try to make jurisdiction proper where it wasn't right in the first instance. And, Your Honor, there are very specific requirements that this Court has set out if a non-party like Velsera is to be held in contempt of an order to which it was not a party. It is required that Velsera be shown to have been in active concert with the enjoined party, in this case, CIPLA. And that showing simply has not been made in this case. Velsera... CIPLA's EPA number was on your page. Well, Your Honor, what is required under the cases, and specifically under the International Rectifier case, is that CIPLA have controlled Velsera or CIPLA have been so legally identified with Velsera as to be essentially the same thing. That's what International Rectifier says. Do you have a joint venture agreement with... There's no agreement with CIPLA. Were your supplier CIPLA? Supplier in the sense that ultimately the product was manufactured by directly between Velsera and CIPLA in this case. And so CIPLA, there is a total absence of proof on the control point in the District Court. And no analysis by the District Court... How did that number get on your package? Is that enforced by EPA or is that with the consent of CIPLA? No, it's clearly with the consent of CIPLA. CIPLA puts the number on there, Your Honor. But this is different. The fact that... Are you the importer of record of the CIPLA products? I'm sorry, Your Honor. Are you the importer of record? We take possession of the product in India and then bring it to the United States and sell it in the United States. You're the importer. You're the importer of the product. I don't believe we literally import the product from CIPLA. What we do is we take possession from a third party in Europe. Now, we know that CIPLA is manufacturing the product, but that's not the test here. We take possession in Europe and, excuse me, in India and bring it to the United States. In international rectifier, exactly the same thing happened. Samsung was the enjoined partner. If there's a determination that the CIPLA product is infringing or is an infringing product and you're the importer, how does that not make you liable? It's a separate inquiry for the party who was not enjoined in the first instance, and that's Valsera. Valsera was not enjoined in the first instance in this case. Isn't this the product equivalent of money laundering? No, Your Honor. It's not at all. I assume you're referring to the QED transactions that intervened between Valsera and CIPLA when you say that. That was open. That was specifically discussed in court. We never denied- CIPLA's product, regulatory approval, right on your package? CIPLA's regulatory approval was on our package, Judge, but that's something that we would need to sell in the United States in any event in this case. In this case, what they needed to show was that CIPLA exercised some control over Valsera. Valsera went with specifications for a new formulation to third parties who then dealt with CIPLA. CIPLA manufactured to those specifications, and then we sold in the United States. There was no showing of control on the part of CIPLA over Valsera. You're saying there was a middleman here, right? There was a middleman. And that's your shelter. Well, that's not my only shelter, Your Honor. I think that helps make the point here that CIPLA did not control Valsera. There was no contract where CIPLA had control over Valsera. But even without those QED transactions in between, this would be the international rectifier case. And the international rectifier case, the enjoined party sold directly to a subsidiary of the non-party to the injunction. And in doing so, was not within the order of the court. The other way that the requirements for concluding that the Valsera product cannot be covered here is the Thiebaud analysis. And under Thiebaud, there were two requirements that had to be made to bring the Valsera product within the contempt findings of the court. And you know you are now within your rebuttal time. Okay. I'm going to use about 30 seconds, Your Honor, and then I will sit down. The fundamental problem with the Thiebaud analysis here is that the default judgment did not provide the foundational requirements that had to be met in order to do the Thiebaud analysis. There was no Protector Plus product. There was no CIPLA product that was specifically analyzed in the default judgment case. There was no claim construction that was specifically done there. So that could not provide the basis for the Thiebaud comparisons that needed to be done. And I'll reserve the remainder of my time, Your Honor. Thank you. Thank you, Mr. Lombardi. Mr. Castanis has a full 20 minutes, undivided. I hope not to take that much time, Your Honor, and may it please the court. Let me try to go through the issues in the order in which my friends on the other side address them. And Judge Rayner, let me start with your question to both of my colleagues on the other side about Rule 4K2. You asked the question about whether a defendant can simply name after the fact, I'd like to be in Arizona. We said in our brief, Guam. But let's say Hawaii, because that was pretty attractive in January. Let's go to Hawaii. Let's go somewhere else. But let's, whatever we do, let's just make it so that the plaintiff can't have the opportunity to choose his fort. But we've shown in our briefs, I think, Judge Rayner, that that's not the way that Rule 4K2 and the way that this court's decision, your opinion for the court, Your Honor, in Touchcom is to be read. The language of that opinion is where it could have been brought. And it's really interesting to note that that language is not only consistent with the general rule that jurisdiction is to be established at the time the complaint is filed, but it's also almost, it's in pari materia to use the language that patent prosecutors like to use, with the regard to the transfer statute. Well, now that we have Rule 4K2, this is the game that's being played by our friends on the other side in order to try to avoid the effect of this default judgment. Judge Schall, you asked the question about the fact that the complaint pled one ground for jurisdiction and that we ultimately ended up relying on 4K2. That's a commonplace, if you look at these various cases. How does it usually work in this kind of a situation where, what's usually the dance that emerges, so to speak, when someone comes in pointing to a long-arm statute, but then they get into 4K2? How does it usually evolve? Well, I think the dance works in a way like Touchcom, although Touchcom was a little different in that it was a removal case to start with. In ISI, the case that's been cited from the Seventh Circuit, Judge Easterbrook's opinion, and that is that the party pleads, there are minimum contacts with a particular state, let's, I want to sue you in Georgia. And the other side comes in and says, we don't have any contacts with any state, or we certainly don't have contacts with Georgia. And then we say, well, we're going to move and assert the jurisdictional ground of Rule 4K2. The plaintiff does that. The plaintiff does that, and that's certainly what we did here. Now, we didn't say we couldn't prove it. We said they've denied it, so let's move to 4K2. And I think if you look at the footnote in Judge Land's opinion for the court, you'll see that that's the way that this went forward. In the setting of the contempt proceeding. Right, right. In the setting of the contempt proceeding. But, you know, again, I refer the court, we've heard a lot about ISI, that's not this court's precedent, of course. So 4K2 was first asserted after judgment had been entered, or at least default judgment. That's right, Judge Rainer. So does 4K2, if it's asserted after judgment has been entered, there's a problem, isn't there? I mean, did it exist at the time that the complaint was filed? And it's elementary that you have to have personal jurisdiction at the time that you initiate a suit. And, in fact, that's what Judge Land found. He found it after the fact because he didn't, because nobody showed up to defend against the complaint in 2007 and 2008. But, ultimately, Rule 4K2, as I was talking to Judge Shaw about just a minute ago, really only works when there's another party in front of the court and they can say, oh no, we don't have those minimum contacts. That's why this comes up in the way that it does in ISI and Touchcom and so many of the other 4K2 cases. There's no rule that I understand that a party in default can rely on the jurisdictional ground that's pled if there's another jurisdictional ground that gives the court personal jurisdiction. And, Judge Rainer, I think I'm remiss in not mentioning here in this context that we know from this record that both of these parties had notice of not only the lawsuit but of the injunction well before the contempt proceedings took place. In particular, CIPLA, we know from the record, and this is at page 11301130 in the Joint Appendix, we know that CIPLA engaged a law firm in Chicago, the Leydig-Voigt Law Firm, to write a letter to the district court asking for informal equitable assistance saying, you know, please, Your Honor, vacate this default judgment, trust us on this, we don't make this product, we don't infringe. Well, the judge properly said, you know, there are ways to do this. 60B, for example, is a very good way to do this. What did CIPLA do? Absolutely nothing. And there are also parts of the record that are not in the Joint Appendix but they're in the record and in the... Suppose you're a foreign defendant and you have a lawsuit brought against you and you look at it, you look at the complaint, you look at, like in this instance, you look at Georgia Law, the long-arm statute, and you make an internal determination, there's no jurisdiction here, the Georgia long-arm does not apply. Isn't it reasonable that the foreign defendant would choose not to show up? No, I don't think it would be reasonable at all at that point. I mean, I know that there is law that says that they take the risk of not appearing in the case, but there is also this 4K2, which comes up, as my colleague Judge Schall earlier indicated, it frequently comes up in unpled, in unlitigated ways. Again, both ISI and TACHCOM, ISI's language is federal courts are entitled to apply the right body of law whether the parties rely upon it or not. That's the quote from Judge Easterbrook's opinion in that case. And this court, similarly in TACHCOM, found no waiver citing to ISI for the proposition. So I don't think that when a party, in particular a party like this, who has actual notice, and in fact tried to get the court three years before the fact to vacate its default judgment on that ground, I don't think there's any ground here for saying that there's a right to rely on a particular jurisdictional allegation. And in particular, I'm sorry, Your Honor, I just wanted to add one other point. If you look, for example, at the model forms following the federal rules of civil procedure, there's no requirement that a specific jurisdictional statute be pled. Now once there is one pled, I still don't, if there's not a requirement to plead one at all, I'm not sure why there is a reliance interest when one in particular is pled, particularly when there are all these other jurisdictional statutes that might very well be invoked in the way that ISI, TACHCOM, other cases set forth. I'm sorry, I didn't mean to interrupt you. You started your argument saying you wanted to answer my question, but I don't think you did. Is it enough for a defendant to simply avail themselves or to say, I'd rather be sued in North Dakota? What else has to happen? They have to show that at the time of the lawsuit, they actually could have been sued in that other forum. In other words, if you look at the affidavits that were put forth and the arguments that were put forth at the time, Judge Reynolds. What do they need to do to show that they could have been sued? They've got to show that at the time we filed the complaint, there were sufficient contacts with their state of Illinois. Also, Mr. Briceblatt, who previously represented CIPLA, also suggested California might be a place also during the hearing is below. They have to actually show that we could have brought the suit in Illinois. They never did and they didn't want to do that because that's fundamentally contrary to their corporate strategy of trying to avoid the United States courts. It's in their annual report. It's in what they send to their industry. Didn't they deny that there were contacts in Illinois? Am I incorrect? Well, in fact, in the 2007 lawsuit that Judge Land cites, they did deny that they had any contacts and that's the case where they said, but we'll consent anyway. But that's what CIPLA was. CIPLA is sending lots of product into this country, not just marital infringing product, but lots of other stuff. And they don't want to be in this court. We know that from the published decisions of this court, Your Honor. And this is, unfortunately, Judge Lurie, you had it exactly right. This is a case of product laundering. And to that point, I just will refer you to the takes place over almost 100 pages of transcript from 4834 to 4927. He will describe, and he is their CEO, he describes in intricate detail the layers. But here's the critical part. CIPLA, they say, well, there are all these layers and they don't take title and the title goes here and it's in Dubai and then it's in the United States. But here's who CIPLA sells to. CIPLA sells to a joint venture between itself and OmniFarm. Those are the QED entities. That's CIPLA as a joint venture right there. The QED entities then sent to FidoFarm in the United States. Or they sent it to FidoFarm and then FidoFarm brings it into the United States. What you see there, and this is in response to Mr. Lombardi's points here, what you see there is action in concert. And I think it's important to correct one thing that Mr. Lombardi said. He talks about an absence of proof on control. Well, I could dispute that as a factual matter. I think it's more important to point out that with regard to contempt, active concert is the issue. And there, Judge Land makes plenty of findings. It's supported by plenty of evidence in the record. And those findings in particular can be found at page JA-16, at paragraph 16, JA-21, at paragraph 25, and it looks like also JA-18 at paragraph 20. Mr. Kostanis, let me ask you, just getting back for a moment, please, to the jurisdictional question. There seem to be findings or determinations, if you will, by the district court in the contempt proceeding that personal jurisdiction under the Georgia long-arm statute is not available. That seems to be... I think to be absolutely rigorously correct about what the judge said, and this is at page JA-8 at footnote 4, the court said that after pointing out that CIPLA asserted long-arm jurisdiction in its complaints, during the pendency of the present proceedings, CIPLA has denied any contacts with the state of Georgia. Since no discovery has been conducted to test CIPLA's denial, and based on evidence that CIPLA has consistently denied significant contacts with any state, Muriel now shifts its jurisdictional focus to Rule 4k-2, and I believe that later on the judge acknowledges that there was no evidence put forth in this proceeding with regard to jurisdiction under the long-arm statute. Perfectly understandable, because this footnote points out that we were proceeding under 4k-2 at that point. JA-13, the court finds, due to its limited transaction of business in Georgia as indicated by the present record, it is doubtful that CIPLA is subject to the jurisdiction of the Georgia courts. Doubtful, and that's understandable, again, given the record that was made here. So we have a situation then where, I guess, jurisdiction in the original action that led to the default judgment was premised on the Georgia long-arm statute, correct? That's the way that our complaint was written, yes. And now, though, the judge has said that, as Judge Lurie pointed out, it's doubtful that jurisdiction exists under that statute. Where does that leave us, then? Well, the question, it leaves us where Judge Land left us, which is that the court did have jurisdiction. It had jurisdiction then under 4k-2, and it has it now under 4k-2. Let me ask you, there are cases which, they were cited, and I looked at them, I can't remember the name, where it says, where they say, before you enter a default judgment, it's necessary, the court has to satisfy itself if there's jurisdiction, personal jurisdiction. How does that play into this situation? What does a court have to do, in your view, assuming you, I think that's the law that some cases have articulated, but in that, given that law, if that's correct, what should a court do to satisfy that inquiry? Whether it's necessary or should assure itself of its own jurisdiction. I think that a district court, in that circumstance, is entitled to look at the allegations of the well-pleaded complaint. I don't think, Judge Shaw, that any case, either cited by my friends on the other side, or that I have seen, requires a district court to do anything other than take that peek and confirm it. And there's no reason to believe here that Judge Land had not done that before entering a default judgment. So you're saying where there's a default, the court just, and when it doesn't have another party before it can, where you have like a situation here where you don't have another party coming in and saying, no, no, the long-arm statute doesn't work, it's enough for the court just to look at the complaint. I think that's right, and certainly when we have specific allegations, as there were here in this complaint, perhaps it would have been a different story if all that our complaint had said is, the court has personal jurisdiction as the forms and as the rules of notice pleading require. That might require a little bit more of an inquiry, but here the well-pleaded complaint, although ultimately turning out to be a ground that we didn't rely upon because when CIPLA came and joined issue, they were claiming no jurisdiction, so we said, fine, we'll approve jurisdiction under Rule 4K2. And if you want to talk about reliance, of course, we had reliance on touchcom decision saying that that's not a waiver. We had ISI in front of us saying that that's not a waiver and courts are entitled to apply the proper body of law. And I think that the equities here lie with us, not with CIPLA with regard to the pleading. Let me go very briefly through a couple of issues that my friend Mr. Setti raised. I'm not going to belabor the point he mentioned, service. Service of process here, that issue is thoroughly waived. It came up first in their appellate brief. And I'm not going to entertain that argument here unless the court has any questions on it. With regard to the issue of extraterritoriality, I think international rectifier, which both of my friends on the other side have mentioned here, is really actually a contrast to this case and it's an illuminating one that really explains why this is a case of laundering and the proper case for contempt not only of the party but of the intervener party acting in concert. If you look at international rectifier, the court ultimately holds in that case that there is no evidence of what the court in that case I believe referred to as collusion. I think collusion is there used as a synonym for acting in concert, assisting, aiding and abetting, the sort of language that appears in the action in concert cases. But here, again, I point you to the testimony of Mr. Steadman as well as the declaration. There is evidence of plenty of collusion, of an agreement, of action together going on here. This is not a case of CIPLA being the innocent manufacturer not knowing what's going on and not realizing that the stuff that they're shipping into the United States is in contempt of the district court's injunction. That's not this record. It's not the findings of Judge Land and those findings are supported by substantial evidence. There's no way in my mind that an appellate court could conclude that there is a definite and firm conviction that a mistake was made with regard to the evidence that was put forth here. Let me ask you, is it possible, and this is just off the top of my head, is it possible on the jurisdictional issue to come to a different result for CIPLA as opposed to Velsera? Well, remember, Judge Shaw, that CIPLA was the only party named in the 2007 act. It's just such a sort of an interesting convoluted case. I was just trying to think. I think you'd have to hypothesize that Velsera was named in a complaint in 2007, which they weren't. And in fact, they probably never would have been at risk of contempt in this action, but for their decision to intervene and try to muddy up the works by trying to get this case transferred to Delaware. What an ambitious intermediary, you'd say. Well, I think one is reminded of expressions like, you pay your money and you take your chances. But they walked into Judge Land's court and said, make us a party. Judge Land said, we'll make you a party. The conclusion of the hearing, Judge Land said, Shaw, leave the evidence open. It does suggest, though, a desire to have clean hands. I mean, if you look at Velsera's track record in this case, I mean, they brought in action in Delaware to determine the validity of the patent. They come into, as you point out, into the contemporary scene. They don't seem to be acting with an improper mens rea. Well, I think with regard, perhaps to their litigation conduct, I have no question about that. With regard to their commercial conduct, it's an entirely different question, and Judge Land's finding will answer that, Judge Shaw. As my time is ticking down, I want to answer what I think is the last point that was made by my friends on the other side, and that was Mr. Lombardi's comment about TiVo. As the court, I think, can appreciate, having dealt with the issues in this case, TiVo does obviously not involve a default judgment. And usually, in the contempt context, you have an adjudication. But here, we pled there was a product. They defaulted. That is admitted. This whole relitigation about whether there was a product, that time is past. And again, I think TiVo itself says at 889 that the time to appeal the scope of an injunction is when it is handed down, not when the party is later found to be in contempt. And I think that answers almost all of the claims that have been made with regard to TiVo. This claim that there was no protector plus product, and what we had to show no colorable differences of, was the product that was adjudged in the default judgment to be infringed. And I think that covers everything that the other side had. Unless the court has further questions, I'll give you back half a minute. Thank you, Mr. Castanis. Thank you. Mr. Setti has two minutes. I'm going to try to cover the questions that were asked and unanswered. Judge Shaw, you were fixed on the issue of what should have happened here procedurally. Because final judgment had already been entered, the only way to add Rule 4K2 to this case would have been to vacate the earlier judgment that was based on the erroneous Georgia long-arm statute jurisdiction to allow amendment and to allow CIPLA to appear as it sought to do at that time. That's exactly what happened in TOUCHCOM. It's what happened in ISI. It's what happened in the district court cases we cited, Bundari and Rubicon. Second, Judge Rayner, you're asking about what else is required other than consent. Consent to jurisdiction has been a consistently accepted principle, both in the Supreme Court and here. Here, it satisfies the rule. Just as in the case that we cited on this point, the Supreme Court and Insurance Corporation of Ireland, 1982, applied in this very circumstance in Knowlton, 8th Circuit, 1990. Consent is a valid basis for personal jurisdiction because personal jurisdictional objections are waivable. And here, CIPLA specifically identified the Northern District of Illinois. Judge Lurie, you asked questions about what happened in Illinois in the other case, the Kinetics case that was cited. In that case, the allegation in the complaint was broad, general and specific jurisdiction. CIPLA specifically said in their amended answer in that case, CIPLA will voluntarily submit to jurisdiction to expedite this case. Otherwise, the allegations are denied. And that's at JA 3299 and 3300. The reason I focus on that is in the same exact time period, 2007, when we're assessing the contacts that CIPLA has with the U.S., CIPLA was a defendant in patent infringement litigation on a human pharmaceutical in Illinois, okay? So, if one wants to look at these facts most favorably to the party, the foreign defendant against which there's a default, there was a perfectly valid basis for the identification or designation of Illinois. Next, the EPA registration number. On that issue, Your Honor, there's an error in the way it was discussed and the way the question was raised. It is not CIPLA's EPA registration. It is LORATICEM, which is associated with Velsera. They filed for it and applied and were able to obtain that registration number. CIPLA's only involvement is it has a site number, which means you identify the site where the chemical was made in India. That's its only involvement. It didn't even file. On an import to the United States, does the foreign manufacturer have to be identified in the shipping documentation? Yes. So, in this case, Velsera was the importer and CIPLA was identified as a manufacturer. That's correct. Thank you, Mr. Seddy. Mr. Lombardi has a little over a minute. Yes, Your Honor. Excuse me, Your Honor. On the product laundering point, just to make sure the facts and our position is clear here, Your Honor, if you remove the QED transactions from this case, you would get the same result that we're asking for. That is the international rectifier result, which had a foreign manufacturer selling to an American or a company that was selling in the United States, and there was no finding. There was no finding of contempt in that instance by the third-party seller. And the reason was that there was no active control. Rectifier ties the active concert inquiry. Counsel is correct. It is an active concert inquiry, but international rectifier ties that active concert inquiry to proof of control or legal relationship. There is no proof, no control by CIPLA over Valsera here. Valsera was not trying to hide anything. In a PAN case, is there not, in a PAN case, would we not find that there's a legal relationship when the importer knows who the manufacturer is, and there's been a finding of infringement on the part of the manufacturer? Well, Your Honor, one point of clarification here is that the theory here is not importing under 271. The theory here is active concert aiding and abetting of a violation by CIPLA. So that issue is really not what is before the court in this case. What Valsera tried to do here was, Valsera was the first party to go to a court and ask for a judgment on infringement and invalidity. This wasn't some kind of laundering scheme to avoid a day of reckoning or void consideration. That's what Valsera wanted. And that's what Valsera still wants today as opposed to a decision in the truncated content proceedings that went forward here. Thank you, Mr. Lombardi. We will take a case on revisement, and the panel will.